ESTATE OF RALPH R. HUESMAN, DECEASED, NURMA W. HUESMAN, FRED B. HUESMAN, AND THE FARMERS AND MERCHANTS NATIONAL BANK OF LOS ANGELES, EXECUTORS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 20164.    Promulgated March 29, 1951.

*H. B. Thompson, Esq.*, for the petitioners.
*Robert H. Kinderman, Esq.*, for the respondent.

OPINION.

RICE, *Judge:* The Commissioner ·determined a deficiency in income tax for the fiscal year ended April 30, 1945, in the amount of $57,923.50. The sole issue is whether in determining taxable net income of the estate, petitioners were correct in deducting an amount of $80,517 under section 162 of the Internal Revenue Code.

All of the facts were stipulated, are so found and are incorporated herein.

The return was filed with the collector of internal revenue for the sixth district of California.

Ralph R. Huesman, a resident of California, died testate on May 3, 1944, leaving an estate of about four million dollars. Decedent's will was admitted to probate by order of the Superior Court of Los Angeles, on June 14, 1944. The decedent provided for alternative dis-

tributions of his property based upon the size of his estate. Under the terms of the will which became operative, all of decedent's property was placed in trust. Since the estate exceeded $250,000, the provisions of the will involved in the instant case are as follows:

### Article V.

I give, devise and bequeath all the rest, residue, and remainder of my estate, real, personal and mixed, of every kind and nature and wherever situated, which I may own at the time of my death, and all other property over which I may have any power of disposition (all of said property being hereinafter referred to as the "Trusteed Property"), to the Trustees hereinafter named, to have and to hold upon the following trusts and conditions:

E * * *

5. The Trustees shall pay and distribute a sum of money equal to ten per cent (10%) of the Trusteed Property as follows: To my friend DR. HENRY M. ROONEY, and if he be deceased to his wife, MRS. MAY ROONEY, the sum of Two Thousand Dollars ($2,000.00); to my loyal secretary and employee LEONORA ZINNER, the sum of Two Thousand Dollars ($2,000.00); and to MRS. GREGORY HARAN, my former secretary who rendered very loyal service to me, the sum of Two Thousand Dollars ($2,000.00); * * * and the balance of said sum of money shall be paid and distributed by the Trustees to the following named organizations and in the proportions as follows: To Loyola University of Los Angeles, Regents' Fund, five-tenths (5/10th); * * *. Such conversion of Trusteed Property into money and payments and distributions made to said organizations shall be made by the Trustees within five (5) years after distribution to the Trustees and shall be made at such time and in such amounts as may be convenient for the Trustees in consideration of the condition of the Trust Estate, and the Trustees may exercise in their sole discretion as to when and in what amounts such payments and distributions shall be made within said period of five (5) years. * * *

At the time of his death, decedent was president of Desmond's, a retail merchandising corporation carrying on business in southern California. There was due and owing decedent from Desmond's at the time of his death, the sum of $80,517 as a bonus for services rendered by him prior to his death. This amount was included in the Federal estate tax return as part of the gross estate under section 811 of the Internal Revenue Code, as the value of decedent's claim against Desmond's.

On April 10, 1945, the executors of the petitioner estate, in that capacity and their capacity as testamentary trustees, petitioned the appropriate court for instructions, and at the same time filed a petition requesting an order for partial distribution.

In the petition for instructions the following allegations appeared:

### VI

Among the claims filed and allowed is that of Desmond's, a corporation, which has been allowed in the sum of $30,562.06, representing the balance of mutual account between Desmond's and the decedent, as follows:

Promissory note due Desmond's _____ $80, 283. 30
Interest on note to date of death _____ 3, 231. 20
Advances on open account _____ 27, 094. 51

Total due Desmond's at date of death _____ 110, 609. 01
Plus additional interest on note to date of claim _____ 470. 05

Total due Desmond's at date of claim _____ 111, 079. 06
Less Compensation due decedent in form of bonus at date of
death _____ 80, 517. 00

Net amount due Desmond's and allowed as a claim _____ 30, 562. 06

\*     \*     \*     \*     \*     \*     \*

### VIII

\* \* \* One of said beneficiaries is LOYOLA UNIVERSITY OF LOS ANGELES, REGENTS' FUND, which is entitled to a sum of money equal to approximately 5% of the Trusteed Property, amounting to approximately $98,000.00.

### IX

LOYOLA UNIVERSITY is an educational institution located in Los Angeles, California. Said institution is in need of cash funds and desires a partial distribution of the bequest in its favor under decedent's will in the amount of said bonus, to wit, the sum of $80,517.00.

On April 10, 1945, concurrent with the other petitions, the executors requested an order to borrow $110,000 for 3 months on an unsecured note.

On April 30, 1945, the court entered its order, ordering the executors to borrow the $110,000, to pay the same to Desmond's, and to receive from Desmond's the $80,517. Throughout the orders, the court referred to the $80,517 specifically as compensation due decedent in the form of a bonus at the time of his death. The executors were ordered to pay this specific sum to the testamentary trustees who in turn were ordered to pay the same specific sum to Loyola University, Regents' Fund, as the ultimate beneficiary under the trust, in partial satisfaction of its legacy, which was approximately $98,000.

On the same day, April 30, 1945, Desmond's paid the $80,517 to the executors, who paid it to the testamentary trustees, who in turn paid it to Loyola University, Regents' Fund. At the time the testamentary trustees received and distributed the $80,517 it constituted the only cash asset of the trust estate. The petitioner estate also borrowed $110,000 on a 3-month unsecured note from The Farmers and Merchants National Bank of Los Angeles (an executor and trustee of the estate) on April 30, 1945. This sum was repaid on July 30, 1945. The $110,000 so borrowed was applied to pay Desmond's claim against the estate of $111,079.06.

In all accounting records of the estate, and the trust, the $80,517 was treated as principal, i. e., as a receipt of, and distribution of, principal.

Under both section 811 (a) of the Internal Revenue Code and section 600 of the California Probate Code, the bonus is considered part of the corpus of the decedent's estate. *Estate of G. Percy McGlue*, 41 B. T. A. 1199 (1940).

In its Federal income tax return for the year ended April 30, 1945, the petitioner estate reported the $80,517 item as income of the estate under section 126 (a) (1) (A) of the Internal Revenue Code. It deducted $37,359.89 [1] on its 1945 return as the amount of estate tax attributable to the inclusion of the $80,517 item in the Federal estate tax return, as authorized by section 126 (c) of the Internal Revenue Code and deducted $80,517 as an allowable deduction under section 162 of the Internal Revenue Code, or deductions totaling $117,876.89. The applicable provisions are set forth in the margin.[2]

---

[1] The change of this amount to $36,514.30 by the respondent is not contested by the petitioner.

[2] SEC. 126. INCOME IN RESPECT OF DECEDENTS.

(a) INCLUSION IN GROSS INCOME.—

(1) GENERAL RULE.—The amount of all items of gross income in respect of a decedent which are not properly includible in respect of the taxable period in which falls the date of his death or a prior period shall be included in the gross income, for the taxable year when received, of :

(A) the estate of the decedent, if the right to receive the amount is acquired by the decedent's estate from the decedent :

* * * * * * *

(3) CHARACTER OF INCOME DETERMINED BY REFERENCE TO DECEDENT.—The right, described in paragraph (1), to receive an amount shall be treated, in the hands of the estate of the decedent or any person who acquired such right by reason of the death of the decedent, or by bequest, devise, or inheritance from the decedent, as if it had been acquired by the estate or such person in the transaction by which the decedent acquired such right ; and the amount includible in gross income under paragraph (1) or (2) shall be considered in the hands of the estate or such person to have the character which it would have had in the hands of the decedent if the decedent had lived and received such amount.

* * * * * * *

(c) DEDUCTION FOR ESTATE TAX.—

(1) ALLOWANCE OF DEDUCTION.—A person who includes an amount in gross income under subsection (a) shall be allowed, for the same taxable year, as a deduction an amount which bears the same ratio to the estate tax attributable to the net value for estate tax purposes of all the items described in subsection (a) (1) as the value for estate tax purposes of the items of gross income or portions thereof in respect of which such person included the amount in gross income (or the amount included in gross income, whichever is lower) bears to the value for estate tax purposes of all the items described in subsection (a) (1).

(2) METHOD OF COMPUTING DEDUCTION.—For the purposes of paragraph (1) :

(A) The term "estate tax" means the tax imposed upon the estate of the decedent under section 810 or 860, reduced by the credits against such tax, plus the tax imposed upon the estate of the decedent under section 935, reduced by the credits against such tax.

(B) The net value for estate tax purposes of all the items described in subsection (a) (1) shall be the excess of the value for estate tax purposes of all the items described in subsection (a) (1) over the deductions from the gross estate in respect of claims which represent the deductions and credit described in subsection (b).

(C) The estate tax attributable to such net value shall be an amount equal to the excess of the estate tax over the estate tax computed without including in the gross estate such net value.

SEC. 162. NET INCOME. The net income of the estate * * * shall be computed in the same manner and on the same basis as in the case of an individual, except that—

(a) There shall be allowed as a deduction (in lieu of the deduction for charitable, etc., contributions authorized by section 23 (o)) any part of the gross income, without limitation, which pursuant to the terms of the will or deed creating the trust, is during the

The basic question here is whether, as a matter of law, the petitioners are entitled to a deduction under one of the subsections of section 162 of the Code. In determining petitioners' right to a deduction we must look to the provisions of the decedent's will and ascertain his intention with respect to the disposition of his property. Article V of the will provides for the transfer of decedent's residuary estate to trustees under certain trusts and conditions. One of these trusts provided that the trustees should pay and distribute a sum of money equal to 5 per cent of the Trusteed Property to Loyola University. The trustees were authorized to turn the Trusteed Property into money and make the payments to Loyola University and other named organizations at any time within 5 years after distribution of the Trusteed Property to the trustees. Article V of decedent's will makes no provision whatsoever for the distribution of any sum of money as income to Loyola University but only for the payment and distribution of a sum of money equal to 5 per cent of the Trusteed Property (the exact language is five-tenths of 10 per cent of the Trusteed Property). Our analysis of this portion of the decedent's will convinces us that decedent intended by the hereinabove-quoted portions of Article V to distribute a part of the trust corpus and that he made no provision whatsoever for the distribution of any sum as income.

Petitioners herein have recognized that the bonus item, under section 126, is taxable income to the decedent's estate and the stipulated facts show that they have so reported it. It should also be noted that petitioners have claimed and been allowed a deduction under section 126 (c) because of the estate tax attributable to the inclusion in decedent's gross estate of the value of the claim against Desmond's of $80,517.

---

taxable year paid or permanently set aside for the purposes and in the manner specified in section 23 (o), or is to be used exclusively for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals, or for the establishment, acquisition, maintenance or operation of a public cemetery not operated for profit ;

(b) There shall be allowed as an additional deduction in computing the net income of the estate * * * the amount of the income of the estate * * * for its taxable year which is to be distributed currently by the fiduciary to the legatees, heirs, or beneficiaries, but the amount so allowed as a deduction shall be included in computing the net income of the legatees, heirs, or beneficiaries whether distributed to them or not. As used in this subsection, "income which is to be distributed currently" includes income for the taxable year of the estate * * * which, within the taxable year, becomes payable to the legatee, heir, or beneficiary. Any amount allowed as a deduction under this paragraph shall not be allowed as a deduction under subsection (c) of this section in the same or any succeeding taxable year ;

(c) In the case of income received by estates of deceased persons during the period of administration or settlement of the estates, * * * there shall be allowed as an additional deduction in computing the net income of the estate * * * the amount of the income of the estate * * * for its taxable year, which is properly paid or credited during such year to any legatee, heir, or beneficiary, but the amount so allowed as a deduction shall be included in computing the net income of the legatee, heir, or beneficiary ;

Up to this point the parties are in agreement about the application of the Code in determining the income tax liability of the decedent's estate. The controversy arises because the petitioners contend that they are also entitled to deduct the $80,517 paid over to the trustees upon the order of the court, which order refers to the $80,517 as compensation due decedent in the form of a bonus at the time of his death. It is petitioners' contention that, since they collected the $80,517 as an income item, it still retained its income character when distributed by the executors.

We have found no case directly in point. A look at the legislative history of section 126 is helpful in determining what effect its addition to the Code had on section 162. Section 42 of the Revenue Act of 1934 required all income accrued up to the date of death, not otherwise properly includible for such period or a prior period, be included in the income tax return of a decedent for the period in which fell the date of his death. This provision was enacted because the courts had held under prior law that income accrued before death but received by the estate was not income to the estate but a part of corpus. Cf. *Nichols* v. *United States*, 64 Ct. Cls. 241 (1927), certiorari denied, 277 U. S. 584 (1928) ; *Commissioner* v. *United States Trust Co. of New York* (CA-2, 1944), 143 Fed. (2d) 243, certiorari denied, 323 U. S. 727 (1944). Therefore, since neither the estate nor the decedent ever paid income tax on such amounts, until this provision of the Revenue Act of 1934 changed the treatment, such amounts escaped income tax entirely. H. Rept. No. 704, 73rd Cong., 2nd Sess., §§ 42 and 43 (1934) p. 24; Sen. Rept. No. 558, 73rd Cong., 2nd Sess., §§ 42 and 43 (1934) p. 28.

This provision of the Revenue Act of 1934 required the inclusion of the value for services rendered, whether based on agreed compensation or on quantum meruit, in decedent's final return as accrued income. *Helvering* v. *Estate of Enright*, 312 U. S. 636 (1941) ; *Pfaff, et al., Executors* v. *Commissioner*, 312 U. S. 646 (1941). In some instances, such treatment resulted in hardship as, quite frequently, amounts which would have been received over a number of years were returnable in the year of death thus boosting the income into much higher brackets.

To alleviate such hardship, section 126 of the Code was added by the Revenue Act of 1942 to provide that income accruing to a decedent because of his death was not includible in his final return but was to be treated as income and reported as income by the one receiving the right to such income (usually the estate). Such treatment was for the express purpose of alleviating a hardship and at the same time preventing certain income from escaping income taxation. H. Rept. No. 2333. 77th Cong., 2nd Sess., § 125 (1942) p. 83; Sen. Rept. No. 1631, 77th Cong., 2nd Sess., § 135 (1942) p. 100.

The claim which decedent's estate had against Desmond's was at all times part of the corpus of decedent's estate. The fact that the Congress saw fit to relieve the hardship to a decedent, from an income tax standpoint, by requiring that the amount collected on such claim be reported as income of the decedent's estate, in no wise affects the character of this asset which was fixed and determined at the date of the decedent's death. The subsequent liquidation of the claim merely converted the form of the asset from a chose in action into cash. When the executors transferred the amount of the liquidated claim to the trustees pursuant to the order of the court, they transferred a part of the decedent's residuary estate to the trustees who were then directed to proceed further with respect to the distribution of the testamentary trust in accordance with the intention of the decedent's will. It was the trustees who made the distribution to the trust beneficiary, Loyola University. The beneficiary received the corpus of the trust and not income of the trust. The trust at that time had no income for our findings show that the $80,517 was the only cash asset in the hands of the trustee.

Our ultimate conclusion is further strengthened by those cases which hold that where capital gains are distributed by an estate, such distributions are not deductible as payment of income under section 162 where either the will or the law of the state having jurisdiction provides that such gains constitute corpus. Cf. *Charles Simon, et al., Executors* v. *Hoey*, 88 Fed. Supp. 754 (1949), affd., *per curiam* (CA-2, 1950), 180 Fed. (2d) 354, certiorari denied, 339 U. S. 966 (1950); *Estate of Henry H. Rogers*, 1 T. C. 629, 637, 638 (1943), affd. (CA-2, 1944), 143 Fed. (2d) 695, certiorari denied. 323 U. S. 780 (1944); *William B. Weigel et al., Trustees*, 34 B. T. A. 237, 239 (1936), affd. (CA-7, 1938) 96 Fed. (2d) 387; *Anna M. Chambers, et al., Trustees*, 33 B. T. A. 1125 (1936).

In view of the foregoing we hold that the Commissioner correctly denied any deduction under section 162. Internal Revenue Code.

Reviewed by the Court.

*Decision will be entered for the respondent.*