CASCO BANK & TRUST COMPANY,
Trustee u/w Arthur Clifford
Bunker, Plaintiff,

v.

UNITED STATES of America,
Defendant.

Civ. No. 75–5 SD.

United States District Court,
D. Maine, S. D.

Dec. 2, 1975.

Thomas J. Van Meer, Portland, Me., for plaintiff.

Peter Mills, U. S. Atty., Portland, Me., Daniel J. Dinan, Trial Atty., Tax Div., U. S. Dept. of Justice, Washington, D. C., for defendant.

## OPINION AND ORDER OF THE COURT

GIGNOUX, District Judge.

This is an action for refund of $15,-519.93 federal income taxes, plus statutory interest, alleged to have been erroneously assessed to and paid by plaintiff Casco Bank & Trust Company, trustee under the will of Arther Clifford Bunker, for the years 1966, 1967 and 1968. The sole issue presented is whether, on its income tax return for each of the years in question, the Arthur Clifford Bunker trust properly claimed a deduction under Section 642(c) of Subchapter J of the Internal Revenue Code of 1954, 26 U.S.C. § 642(c) ("the Code"), for amounts permanently set aside for charitable purposes. The facts have been stipulated, and the case is before the Court on cross-motions for summary judgment.

## I

### The Statutory Framework

The pertinent statutes are set forth in an appendix. In material part, they provide as follows.

Section 641(a) of the Code imposes a tax upon the taxable income of trusts and estates. The taxable income of an estate or trust is determined in essentially the same manner as that of an individual. According to Treas.Reg. (Inome Tax) § 1.641(b)–1, 26 CFR § 1.641(b)–1:

> Generally, the deductions and credits allowed to individuals are also allowed to estates and trusts. However, there are special rules for the computation of certain deductions and for the allocation between the estate or trust and the beneficiaries of certain credits and deductions . . . . In addition, an estate or trust is allowed to deduct, in computing its taxable income, the deductions provided by sections 651 and 661 and regulations thereunder, relating to distributions to beneficiaries.

Section 661(a) of the Code provides that in computing the taxable income of an estate or trust in any taxable year there shall be allowed as a deduction for distributions to beneficiaries the sum of: (1) the amount of income for the taxable year which is required to be distributed currently, and (2) any other amounts properly paid or credited or required to be distributed for such taxable year; but such deduction shall not exceed the distributable net income of the estate or trust.[1] Section 661(b) of the Code provides that the deduction allowed by Section 661(a) shall be allocated pro rata among the different classes of income that comprise the distributable net income of the estate or trust, unless the will or trust instrument specifically provides for a different allocation.

The term "beneficiary" is defined in Section 643(c) of the Code to include heirs, legatees and devisees. The applicable regulation makes it clear that a "trust created under a decedent's will is a beneficiary of the decedent's estate." Treas.Reg. (Income Tax) § 1.643(c)–1, 26 CFR § 1.643(c)–1.

Section 662(a) of the Code requires a beneficiary of an estate or trust described in Section 661 to include in gross income the amount of income for the taxable year required to be distributed currently to such beneficiary, whether distributed or not, and any other amounts properly paid or credited or required to be distributed to such beneficiary for the taxable year; but not in excess of the distributable net income of the estate or trust. Section 662(b) provides that the amounts determined under Section 662(a) shall have the same character in the hands of the beneficiary as in the hands of the estate or trust.

Section 643(b) of the Code defines the term "income" for the purposes of the sections of the Code relating to the taxation of estates and trusts. Section 643(b), in part, provides:

> [T]he term "income", when not preceded by the words "taxable", "distributable net", "undistributed net", or "gross", means the amount of income of the estate or trust for the taxable year determined under the terms of the governing instrument and applicable local law.

---

1. The distributable net income, which limits the amount deductible by an estate or trust and the amount taxable to beneficiaries, *see infra,* is defined in Section 643(a) of the Code as modified by Section 661(c) of the Code. In essence, the distributable net income of an estate or trust is the taxable income adjusted (1) to include items, such as tax-exempt interest and excluded dividends, which are not includible in the gross income of the trust or estate, but which nevertheless are available for distribution to the beneficiaries or (2) to exclude items, such as capital gains, which are includible in the gross income of the estate or trust but which are not available for distribution to beneficiaries.

Finally, Section 642(c) of the Code provides that an estate or trust shall be allowed as a deduction in computing its taxable income any amount of gross income which pursuant to the terms of the governing instrument, during the taxable year, is paid or permanently set aside for charitable purposes. Specifically, Section 642(c), in pertinent part, provides:

(c) *Deduction for amounts paid or permanently set aside for a charitable purpose.*—In the case of an estate or trust . . . there shall be allowed as a deduction in computing its taxable income . . . any amount of the gross income, without limitation, which pursuant to the terms of the governing instrument is, during the taxable year, paid or permanently set aside for a purpose specified in section 170(c) . . . . .

## II

### The Factual Context

In the instant case, plaintiff is the trustee of a testamentary trust established under the will of Arthur Clifford Bunker, who died on April 27, 1965, a resident of Harpswell, Maine. The will provided that the trustee was to hold and manage the corpus of the trust estate and pay the income thereof to Mr. Bunker's daughter, Ruth, for life. After Ruth's death, the trust income was to go to her brother, Paul, for his life, and after Paul's death, the income was to be paid, in perpetuity, equally to the Maine Institution for the Blind and the New York Association for the Blind. It is stipulated that these organizations are qualified Section 170(c) charities.

For each of the years in issue, distributions from the estate to the trust and from the trust to the current income beneficiaries (Ruth and Paul) followed the same pattern. In each year the estate received gross income, consisting of interest and dividends, which the estate returned on a fiscal year basis ending March 31. After claiming allowable deductions, the estate offset the balance of its income by a distribution to the trust deductible under Section 661(a)(2). The property distributed to the trust, however, was corpus (stock and securities) of the estate, not income earned by the estate.[2]

The distributions of corpus from the estate to the trust for each year exceeded the estate's distributable net income. Consequently, pursuant to Section 662(a), the trust included in its gross income only the portion of the distributions equal to the estate's distributable net income.[3] Since, as the government agrees, the stock and securities distributed by the estate to the trust constituted corpus of the trust under Maine law, the trustee, following the instructions of the will, held these assets as principal and distributed no portion of them to the income beneficiaries. The

2. For example, during its taxable year ended March 31, 1966, the estate received gross income, consisting of interest and dividends, in the amount of $25,113.53. The distributable net income for that year amounted to $13,044.69. During the year, the estate transferred to the trust stock and securities having the following fair market values on the date of transfer:

| | |
|---|---|
| 600 shares Corn Products | $28,200.00 |
| $10M New York State Power Authority General Revenue Bonds | 8,900.00 |
| TOTAL | $37,100.00. |

In accordance with Section 661(a)(2), the estate claimed a distribution deduction of $13,044.69, being an amount equal to the lesser of its distributable net income and the amounts distributed.

The validity of the estate's returns is not at issue in this case.

3. For example, during its taxable year ended December 31, 1966 (the trust returned on a calendar year basis), in accordance with Section 662(a), the trust reported as gross income only the portion of the assets received by it from the estate, note 2 *supra*, which was equal to the estate's distributable net income, *i. e.*, $13,044.69.

trust then claimed a Section 642(c) deduction therefor as gross income permanently set aside for charitable purposes.

The treatment of the specific amounts for each year in issue by the estate was as follows:

|  | F/Y/E 3–31–66 | F/Y/E 3–31–67 | F/Y/E 3–31–68 |
|---|---|---|---|
| Gross income (dividends and interest | $25,113.53 | $26,311.29 | $24,509.08 |
| Allowable deductions | 12,068.84 | 11,977.82 | 506.25 |
| Distribution deduction | 13,044.69 | 14,333.47 | 24,002.83 |
| Taxable income | – 0 – | – 0 – | – 0 – |

The treatment of the specific amounts for each year shown on the trust's returns was as follows:

|  | C/Y 1966 | C/Y 1967 | C/Y 1968 |
|---|---|---|---|
| Dividends and interest | $    720.00 | $  1,703.55 | $  4,151.64 |
| Gross income under Code § 662 | 13,044.69 | 14,333.47 | 24,002.83 |
| Total gross income | $13,764.69 | $16,037.02 | $28,154.47 |
|  |  |  |  |
| Charitable deduction under § 642(c) | $13,044.69 | $14,333.47 | $24,002.83 |
| Distribution deduction | 720.00 | 1,581.34 | 3,855.72 |
| Trustee's expenses | – 0 – | 122.21 | 295.92 |
| Taxable income | – 0 – | – 0 – | – 0 – |

—◆—

### III

### The Claimed Section 642(c) Charitable Deduction

Section 642(c) of the Code provides for the deduction by an estate or trust of "any amount of the gross income" which "pursuant to the terms of the governing instrument" is permanently set aside for charitable purposes. The Commissioner does not contest that the amounts deducted by the trust pursuant to Section 642(c) were permanently set aside for legitimate charitable purposes. His assertion is that the deduction for each year was properly disallowed because it was not for an "amount of the gross income" of the trust which was permanently set aside "pursuant to the terms of the governing instrument." The Court is persuaded that the Commissioner erred in so concluding.

■ Both prerequisites to the Section 642(c) deduction have been met in this case. Section 662(a)(2) of the Code requires an estate beneficiary to include in gross income any amounts paid to the beneficiary for the taxable year up to the amount of the distributable net income of the estate; and this is so even though the amount distributed to the beneficiary is corpus under local state fiduciary accounting law. *United States*

*v. Bank of America National Trust & Savings Ass'n,* 326 F.2d 51, 54 (9th Cir. 1963). Thus, in each year at issue, the stock and securities received by the trust, to the extent of the distributable net income of the estate, constituted "gross income" of the trust. The Commissioner acknowledges this, as indeed he must, if he seeks to establish any income tax liability in the trust.

The governing instrument in this case is the will of Arthur Clifford Bunker, which created the trust. The terms of the trust specifically required that corpus be permanently and exclusively set aside for qualified charitable purposes. Concededly, the assets distributed by the estate to the trust in each year in question constituted corpus under Maine law. As corpus, the assets were thus required by the terms of the will to be permanently set aside by the trustee for the benefit of the charitable remainder beneficiaries. Clearly, the permanent allocation of the assets to charitable purposes was "pursuant to the terms of the governing instrument." *Cf. Old Colony Trust Co. v. Commissioner of Internal Revenue,* 301 U.S. 379, 57 S.Ct. 813, 81 L.Ed. 1169 (1937).

The factual situation in the present case is substantially on all fours with that presented in *United States v. Bank of America National Trust & Savings Ass'n, supra.* In that case, the testator's estate distributed assets and income of the estate to a residuary trust with income beneficiaries and charitable remaindermen. Under Section 661(a) of the Code, the estate treated the distribution as a deductible distribution of income. The trust, pursuant to Section 662(a), included the distribution in its gross income, even though all of the property actually distributed was trust corpus under state law. It then claimed a Section 642(c) deduction to completely offset the gross income. The Commissioner challenged this deduction to the extent of the amount which had been income rather than corpus in the hands of the estate. The government argued that under Section 662(b) this amount must have retained the character of income in the hands of the trust and was therefore not to be held as corpus of the trust but was rather distributable to the income beneficiaries of the trust. Since this amount had not been so distributed, the government concluded, it was taxable to the trust.

The court held that while for federal tax purposes the distributions were deemed to be deductible by the estate and includible in the trust's gross income under Sections 661 and 662 of the Code, by reason of Section 643(b) the question whether the trustee should have distributed these amounts to the income beneficiaries or retained them for the benefit of the charitable remaindermen was governed by the terms of the decedent's will as interpreted by local rather than federal law. Since under local law, and the terms of the will, the amounts received by the trust were required to be treated and held as corpus, and for charitable purposes, the court concluded that these amounts were properly deemed "gross income" of the trust permanently set aside for charitable purposes within the meaning of Section 642(c).

The court flatly rejected the government's theory that the gross income being received by the trust should be deemed income distributable to the individual noncharitable income beneficiaries, and hence was not required to be set aside for charitable purposes under the terms of the decedent's will. The court stated:

Essentially, the theory of the United States is that since the $64,420.44, which was admittedly gross income of the estate, is deemed to have been distributed to the trustee, and is deemed to be income of the trust under the sections heretofore cited, it must be treated as income distributable by the trustee to the income beneficiaries, who are individuals and not charitable corporations or organizations, and that, since such income was distribut-

ed to them, it is taxable in the hands of the trustee.

The difficulty with this position is that there is nothing in the Internal Revenue Code that so provides. It is clear, and it is admitted, that under California law, and under the terms of the will, all of the assets that were in fact distributed to the trustee during the period in question were corpus, and that the trustee was required to hold them as corpus for ultimate distribution to the charitable beneficiaries. It could not, under California law, distribute any part of them to the individual income beneficiaries. The Internal Revenue Code makes local law applicable as the basis on which to determine what is "income" of a trust. [Citing Section 643(b)] . . . .

This rule has been changed by sections 661 and 662 to this extent only, that where, as here, an estate distributes property which exceeds in value the income which the estate could distribute (i. e., distributable income), even though the property actually distributed by the estate is corpus, the estate is then deemed, for federal tax purposes, to have distributed the distributable income. Thus, it is entitled to the deduction for income distributed. The recipient is required, by the same sections, to include in its gross income the amount of the income deemed distributed. These sections, however, do not take the additional step which the government asks this court to take. They do not purport to change the rule that

the disposition of the income deemed to have been received by the distributee, here the trust, is governed by the local law, and the Code makes clear that tax consequences attach according to the actual disposition of that income pursuant to local law. Here, it was required by local law to be treated as and held as corpus, and for charitable purposes. It was thus permanently set aside for charitable purposes within the meaning of section 642. We think that the principles applied in *Estate of Clymer v. Commissioner* [*of Internal Revenue*], 3 Cir., 1955, 221 F.2d 680 are equally applicable here. See also *Old Colony Trust Co. v. Commissioner* [*of Internal Revenue*], 1937, 301 U.S. 379, 57 S.Ct. 813, 81 L.Ed. 1169. 326 F.2d at 53–54.

In the present case, the Commissioner does not dispute the rationale of *Bank of America*.[4] Rather, he presents an argument which he asserts was not presented to the court in that case. Simply stated, the defendant's position in the instant case is that plaintiff is not entitled to a Section 642(c) deduction for the years in issue because the disputed amounts were not set aside for charity "pursuant to the terms of the governing instrument" as required by that section. Specifically, the Commissioner's new argument is that "nowhere in the will did the decedent direct that 'gross income' be permanently set aside for charity; the charities were bequeathed only an interest in the corpus and the Section 642(c) deduction, therefore, must be disallowed."

4. It might be noted that grave difficulties would face the Commissioner if he attempted to adapt his unsuccessful argument in *Bank of America* to the facts of the instant case. In *Bank of America* the Commissioner was arguing that because they were ordinary income in the hands of the estate, amounts distributed to the trust should be deemed income in the hands of the trust under Section 662(b), regardless of local law. Here, however, the amounts distributed to the trust had been corpus in the hands of the estate. Use of Section 662(b), as interpreted by the Commis-

sioner in *Bank of America*, would therefore require that these amounts be deemed corpus in the hands of the trust and not "gross income" eligible for the charitable deduction under Section 642(c). But this adaption of the Commissioner's position in *Bank of America* flies directly in the face of Section 661(a), which expressly requires that up to the amount of the distributable net income of the estate amounts distributed by the estate to the trust are gross income of the trust, regardless of their character in the hands of the estate.

In support of its contention, the government calls the Court's attention to *Huesman's Estate v. Commissioner of Internal Revenue,* 198 F.2d 133 (9th Cir. 1952), and *Wellman v. Welch,* 99 F.2d 75 (1st Cir. 1938). In both of these cases, an executor attempted to take a charitable deduction under Section 162(a) of the 1939 Code, *see* Appendix, the precursor of present Section 642 (c). Section 162(a), in language substantially identical to that of Section 642(c), provided that in computing the "net income" of an estate or trust a deduction might be taken for "any part of the gross income . . . which pursuant to the terms of the will or deed creating the trust, is . . . permanently set aside" for valid charitable purposes. In *Wellman,* the earlier of the two cases cited by defendant, income realized by the estate was distributed by the executor in partial payment of pecuniary legacies to charities, the assets of the estate being insufficient to pay the legacies in full. Under state law, all income received during the settlement of an inadequate estate was deemed corpus and required to be used to make up deficiencies in pecuniary legacies. In affirming the Commissioner's disallowance of the claimed Section 162(a) deduction, the *Wellman* court held that no distribution of corpus, as defined by local law, could qualify for a charitable deduction under Section 162(a). The court apparently read "gross income" as used in that section to include only "income" as defined by local law and concluded that a Section 162(a) deduction was allowable only with respect to income "paid to and received *as such* by charities." 99 F.2d at 77 (emphasis supplied).

In *Huesman's Estate,* the estate collected a bonus owed to the decedent for services rendered. Under Section 126 of the 1939 Code, *see* Appendix, the bonus was "income in respect of a decedent" required to be included in the "gross income" of the estate. On application of the executors, the state probate court, applying local law, determined the bonus to be corpus of the estate and ordered it turned over to the residuary trust for distribution to the charitable beneficiary. Relying on *Wellman,* the court held that the estate was not entitled to a Section 162(a) deduction:

We understand the term "paid pursuant to the terms of the will" in § 162(a) to mean that the charity must be denominated an *income* beneficiary in the instrument or, it at least must receive a right to be paid *income* by virtue of the gift made to it. . . . In the present case . . . the charity is a residuary legatee. In terms there is no gift of income made to the charity; the gift is one of corpus. 198 F.2d at 136 (emphasis in original).

Both *Huesman's Estate* and *Bank of America* were decided by the Court of Appeals for the Ninth Circuit. It is significant that in *Bank of America* that court distinguished its prior decision in *Huesman's Estate,* stating:

In *Huesman's Estate v. Commissioner [of Internal Revenue],* 9 Cir., 1952, 198 F.2d 133 there was also an attempt by the executor and the trustees under a will to set aside for charitable purposes a specific asset of the estate which constituted income. This was not required by the terms of the will or the local law, and hence the case is not in point here. However, the result in that case would seem to be different under the 1954 Code which is here applicable, because there was an actual distribution in that case which would have been recognized under the 1954 Code, but was not recognized under the 1939 Code. 326 F.2d at 55.

■ In *Bank of America,* the court necessarily rejected the implicit assumption of *Huesman's Estate,* as well as of *Wellman,* that the words "gross income" as used in Section 162(a) of the 1939 Code referred only to receipts which constituted income, rather than corpus, under state law. Furthermore, the sug-

gestion that the term "gross income" in Section 162(a) might have a different meaning from that attributed to it in other sections of the Code was persuasively rejected in *Clymer's Estate v. Commissioner of Internal Revenue*, 221 F.2d 680 (3rd Cir. 1955). Holding that "income in respect of a decedent," deemed "gross income" under Section 126 of the 1939 Code, was "gross income" within the meaning of Section 162(a), Judge Maris, writing for the court in *Clymer's Estate*, stated:

> The [Commissioner] argues . . . that the income referred to in section 162(a) is only such income as is earned by the estate during administration and does not include what under state property law would be regarded as corpus of the estate. A sufficient answer to this argument is that in using the phrase "gross income" the sections of the Code in question are applying a federal criterion . . . and are not referring to state law notions of corpus and income. Indeed section 162(a) itself indicates that it is applicable to gross income which might be deemed corpus under state law. For it expressly includes within its purview gains from the sale or exchange of capital assets. Such gains are frequently regarded by state law as belonging to the corpus of the estate and not to income. 221 F.2d at 683.

*See also Midland National Bank of Billings v. United States*, 168 F.Supp. 736, 738–39 (D.Mont.1959). The position taken in *Clymer's Estate* with respect to the 1939 Code gains additional support in this case by reason of the definition of the term "income" in Section 643(b), which was incorporated for the first time in the 1954 Code. The purpose of Section 643(b) was stated in identical language in the House and Senate Committee Reports:

> This definition eliminates the difficulty occasioned in Section 162 of the 1939 Code where the term "income" was used in certain contexts to mean "gross income" and in others to mean income for fiduciary accounting purposes. H.R.Rep.1337, 83d Cong., 2d Sess., reprinted in 3 U.S.Code Cong. & Admin.News p. 4335 (1954); S.Rep. 1622, 83d Cong., 2d Sess., reprinted in 3 *Id.* at p. 4986.

Indeed, at least as to income with respect to the decedent, the Internal Revenue Service itself has conceded the point disputed in *Huesman's Estate* and *Clymer's Estate*. Treas.Reg. (Income Tax) § 1.642(c)–1, 26 CFR § 1.642(c)–1, provides, in pertinent part:

> For [purposes of Section 642(c)] an amount received by an estate or trust which is includible in its gross income as income in respect of a decedent under Section 691(a)(1) is deemed "gross income" of the estate or trust.

Finally, the conclusion that amounts deemed "gross income" of a trust by operation of Section 662(a) are likewise "gross income" of the trust for the purposes of Section 642(c) is in accord with the principle stated by Mr. Justice Brandeis in *Pampanga Sugar Mills v. Trinidad*, 279 U.S. 211, 218, 49 S.Ct. 308, 310, 73 L.Ed. 665 (1929), that "[i]n the absence of express restriction it may be assumed that a term is used throughout a statute in the same sense in which it is first defined." In light of the foregoing, it seems clear that the stock and securities transferred by Mr. Bunker's estate to the trust, and set aside by the trust for the benefit of the charities, constituted "gross income" within the meaning of Section 642(c).

The government's final argument appears to be that the Section 642(c) deduction must fail in this case because Mr. Bunker did not in terms direct that "gross income" of the trust be permanently set aside for charitable purposes. It would necessarily follow from this position that the trust would be entitled to a deduction if Mr. Bunker had merely provided in his will that any "gross income" of the trust which constituted corpus under state law should be permanently set aside for charitable purposes.

But the disposition of the particular assets distributed by the estate to the trust in each of the years in dispute was clearly set out in Mr. Bunker's will. Under the terms of the will they could have had no other destination than dedication to charity. Since this was the clear effect of the language used by Mr. Bunker in his will, the government's argument amounts to no more than semantics.

The Court holds that on its income tax return for each of the years 1966, 1967 and 1968, the Arthur Clifford Bunker trust properly claimed a deduction under Section 642(c) of the Internal Revenue Code of 1954 for amounts permanently set aside for charitable purposes. Accordingly, defendant's motion for summary judgment is denied; plaintiff's motion for summary judgment is granted; and judgment will be entered for plaintiff against defendant in the amount of $15,519.93, plus statutory interest and costs.

It is so ordered.

## APPENDIX

Internal Revenue Code of 1954, Subchapter J (26 U.S.C.):*

### § 641. Imposition of tax

(a) *Application of tax.*—The taxes imposed by this chapter on individuals shall apply to the taxable income of estates or of any kind of property held in trust, . . . .

(b) *Computation and payment.*—The taxable income of an estate or trust shall be computed in the same manner as in the case of an individual, except as otherwise provided in this part. The tax shall be computed on such taxable income and shall be paid by the fiduciary.

---

\* Since the returns in question in this case were filed, the provisions of Subchapter J regarding the federal income taxation of trusts and estates have been substantially revised. *See* Tax Reform Act of 1969, Pub.L. No. 91–172,

### § 642. Special rules for credits and deductions

\*　\*　\*　\*　\*　\*

(c) *Deduction for amounts paid or permanently set aside for a charitable purpose.*—In the case of an estate or trust (other than a trust meeting the specifications of subpart B) there shall be allowed as a deduction in computing its taxable income (in lieu of the deductions allowed by section 170(a), relating to deduction for charitable, etc., contributions and gifts) any amount of the gross income, without limitation, which pursuant to the terms of the governing instrument is, during the taxable year, paid or permanently set aside for a purpose specified in section 170(c), or is to be used exclusively for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals, or for the establishment, acquisition, maintenance or operation of a public cemetery not operated for profit. For this purpose, to the extent that such amount consists of gain from the sale or exchange of capital assets held for more than 6 months, proper adjustment of the deduction otherwise allowable under this subsection shall be made for any deduction allowable to the estate or trust under section 1202 (relating to deduction for excess of capital gains over capital losses). . .

\*　\*　\*　\*　\*　\*

### § 643. Definitions applicable to subparts A, B, C, and D

(a) *Distributable net income.*—For purposes of this part, the term "distributable net income" means, with respect to any taxable year, the taxable income of the estate or trust computed with the following modifications . . . .

(b) *Income.*—For purposes of this subpart and subparts B, C, and D, the term "income", when not preceded by

---

tit. II, §§ 201(b), (e), tit. VIII, § 803(d) (3), 83 Stat. 558, 562, 684, *codified at* 26 U.S.C.A. §§ 641, 642, 664 (Supp.1975). These revisions apply only to taxable years beginning after December 31, 1969.

the words "taxable", "distributable net", "undistributed net", or "gross", means the amount of income of the estate or trust for the taxable year determined under the terms of the governing instrument and applicable local law. Items of gross income constituting extraordinary dividends or taxable stock dividends which the fiduciary, acting in good faith, determines to be allocable to corpus under the terms of the governing instrument and applicable local law shall not be considered income.

(c) *Beneficiary.*—For purposes of this part, the term "beneficiary" includes heir, legatee, devisee.

\*    \*    \*    \*    \*    \*

### § 661. Deduction for estates and trusts accumulating income or distributing corpus

(a) *Deduction.*—In any taxable year there shall be allowed as a deduction in computing the taxable income of an estate or trust (other than a trust to which subpart B applies), the sum of—

(1) any amount of income for such taxable year required to be distributed currently (including any amount required to be distributed which may be paid out of income or corpus to the extent such amount is paid out of income for such taxable year); and

(2) any other amounts properly paid or credited or required to be distributed for such taxable year;

but such deduction shall not exceed the distributable net income of the estate or trust.

(b) *Character of amounts distributed.* —The amount determined under subsection (a) shall be treated as consisting of the same proportion of each class of items entering into the computation of distributable net income of the estate or trust as the total of each class bears to the total distributable net income of the estate or trust in the absence of the allocation of different classes of income under the specific terms of the governing instrument. In the application of

the preceding sentence, the items of deduction entering into the computation of distributable net income (including the deduction allowed under section 642(c)) shall be allocated among the items of distributable net income in accordance with regulations prescribed by the Secretary or his delegate.

(c) *Limitation on deduction.*—No deduction shall be allowed under subsection (a) in respect of any portion of the amount allowed as a deduction under that subsection (without regard to this subsection) which is treated under subsection (b) as consisting of any item of distributable net income which is not included in the gross income of the estate or trust.

### § 662. Inclusion of amounts in gross income of beneficiaries of estates and trusts accumulating income or distributing corpus

(a) *Inclusion.*—Subject to subsection (b), there shall be included in the gross income of a beneficiary to whom an amount specified in section 661(a) is paid, credited, or required to be distributed (by an estate or trust described in section 661), the sum of the following amounts:

(1) *Amounts required to be distributed currently.*—The amount of income for the taxable year required to be distributed currently to such beneficiary, whether distributed or not. If the amount of income required to be distributed currently to all beneficiaries exceeds the distributable net income (computed without the deduction allowed by section 642 (c), relating to deduction for charitable, etc., purposes) of the estate or trust, then, in lieu of the amount provided in the preceding sentence, there shall be included in the gross income of the beneficiary an amount which bears the same ratio to distributable net income (as so computed) as the amount of income required to be distributed currently to such beneficiary bears to the amount required to be distributed currently to all benefi-

ciaries. For purposes of this section, the phrase "the amount of income for the taxable year required to be distributed currently" includes any amount required to be paid out of income or corpus to the extent such amount is paid out of income for such taxable year.

(2) *Other amounts distributed.*— All other amounts properly paid, credited, or required to be distributed to such beneficiary for the taxable year. If the sum of—

(A) the amount of income for the taxable year required to be distributed currently to all beneficiaries, and

(B) all other amounts properly paid, credited, or required to be distributed to all beneficiaries exceeds the distributable net income of the estate or trust, then, in lieu of the amount provided in the preceding sentence, there shall be included in the gross income of the beneficiary an amount which bears the same ratio to distributable net income (reduced by the amounts specified in (A)) as the other amounts properly paid, credited, or required to be distributed to the beneficiary bear to the other amounts properly paid, credited, or required to be distributed to all beneficiaries.

(b) *Character of amounts.*—The amounts determined under subsection (a) shall have the same character in the hands of the beneficiary as in the hands of the estate or trust. For this purpose, the amounts shall be treated as consisting of the same proportion of each class of items entering into the computation of distributable net income as the total of each class bears to the total distributable net income of the estate or trust unless the terms of the governing instrument specifically allocate different classes of income to different beneficiaries. In the application of the preceding sentence, the items of deduction entering into the computation of distrib-

utable net income (including the deduction allowed under section 642(c)) shall be allocated among the items of distributable net income in accordance with regulations prescribed by the Secretary or his delegate. In the application of this subsection to the amount determined under paragraph (1) of subsection (a), distributable net income shall be computed without regard to any portion of the deduction under section 642(c) which is not attributable to income of the taxable year.

\* \* \* \* \* \*

Internal Revenue Code of 1939 (26 U.S.C.):

§ *126. Income in respect of decedents*

(a) *Inclusion in gross income.*

(1) *General rule.* The amount of all items of gross income in respect of a decedent which are not properly includible in respect of the taxable period in which falls the date of his death or a prior period shall be included in the gross income, for the taxable year when received, of:

(A) the estate of the decedent, if the right to receive the amount is acquired by the decedent's estate from the decedent;

\* \* \* \* \* \*

(3) *Character of income determined by reference to decedent.* The right, described in paragraph (1), to receive an amount shall be treated, in the hands of the estate of the decedent or any person who acquired such right by reason of the death of the decedent, or by bequest, devise, or inheritance from the decedent, as if it had been acquired by the estate or such person in the transaction by which the decedent acquired such right; and the amount includible in gross income under paragraph (1) or (2) shall be considered in the hands of the estate or such person to have the character which it would have had in the hands of the decedent if the decedent had lived and received such amount.

\* \* \* \* \* \*

## § 162.  *Net income*

The net income of the estate or trust shall be computed in the same manner and on the same basis as in the case of an individual, except that—

(a)  .  .  .  there shall be allowed as a deduction (in lieu of the deduction for charitable, etc., contributions authorized by section 23(*o*)) any part of the gross income, without limitation, which pursuant to the terms of the will or deed creating the trust, is during the taxable year paid or permanently set aside for the purposes and in the manner specified in section 23(*o*), or is to be used exclusively for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals, or for the establishment, acquisition, maintenance or operation of a public cemetery not operated for profit. Where any amount of the income so paid or set aside is attributable to gain from the sale or exchange of capital assets held for more than six months, proper adjustment of the deduction otherwise allowable under this subsection shall be made for any deduction allowable to the trust under section 23(ee);